```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                          EASTERN DIVISION
```

THOMAS H. TAYLOR, JR.                                      PLAINTIFF

VS.                                      CASE NO. 4:06CV124TSL-LRA

TOWN OF DEKALB, MISSISSIPPI, AND
KIRK MERCHANT, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS DEKALB POLICE CHIEF                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas H. Taylor, Jr. filed this action pursuant to 42 U.S.C. § 1983 asserting claims for false arrest, excessive force and the alleged unlawful seizure of certain property, all stemming from his January 16, 2006 arrest by defendant Kirk Merchant, then Chief of Police of the Town of DeKalb. The case is presently before the court on the motion of defendants Town of DeKalb, Mississippi, and Kirk Merchant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted in part and denied in part, as set forth herein.

The basic facts giving rise to plaintiff's claims, as drawn from the record, are as follows. On the evening of January 16, 2006, Merchant went to the home of Tom Taylor and his wife Jane to investigate a report by Jane's ex-husband, Jeffrey Jowers, that he

suspected or feared that his eleven-year-old daughter might be experiencing some form of abuse in the home.[1] After speaking with the Taylors and the children, Merchant concluded that the children were safe and there was no cause for concern. Upon leaving the Taylor residence, Merchant noticed a car parked alongside the carport. He wrote down the tag number, and when he later ran it through the NCIC, he discovered the car, a Pontiac Sunbird, had been reported as stolen by a Hertz car rental company in Memphis, Tennessee. Merchant then ran an NCIC check on Tom Taylor, which indicated in addition to the report of the stolen car by Hertz, that there was an outstanding warrant for Taylor in Georgia for a bad check. Merchant returned to the Taylor residence late that night with two deputies in order to arrest plaintiff relating to the stolen car and bad check.

Plaintiff and defendant Merchant have offered significantly different versions of how the arrest was conducted. Plaintiff has testified that when he heard Merchant knocking and opened the door, Merchant reached in and grabbed him and pulled him out of the house and flung him around 180 degrees and slammed him into the front of his wife's van, causing him to hit his stomach on the front of the van and right ear on the hood of the van, as a result of which he suffered severe abdominal pain and loss of hearing in his right ear. In contrast, Merchant has testified that he did

---

[1] Jowers was a police officer with the Town of DeKalb.

not grab or touch plaintiff when he came to the door, but rather asked him to step outside, which plaintiff did. When Taylor exited the home, Merchant put his right hand on plaintiff's left wrist, pulled him to the van and told him to put his hands on the van and that he was under arrest. According to Merchant, he told plaintiff that if he did not give "any trouble" then "he wouldn't get hurt." Merchant further testified that Taylor "cooperated a hundred percent. Put his hands behind his back, and I handcuffed him." After plaintiff was handcuffed, the deputies escorted him to the patrol car.

Once plaintiff was in the police car, Merchant went back to the house and spoke with Mrs. Taylor. The two entered the home, and within a few minutes, Merchant came out of the house carrying a box containing papers and other items belonging to plaintiff. He placed the box in the trunk of the patrol vehicle, and proceeded to drive to the police station. When they arrived at the police station, Merchant applied shackles, ostensibly so that plaintiff would not run, and after a period of time, plaintiff was transported to the Kemper County Correctional Facility, where he was booked on charges of being a "fugitive from justice."

Plaintiff was released the following day, after paying a $38 bad check charge from Georgia. According to plaintiff, upon his release, he asked for his box of personal property but was told to come back for it the next day. This, he did, but plaintiff claims

3

that many of the items that were in the box when it was taken were missing, including tie tacks, copies of income tax returns for several years, books, CD's and aviation maps.

Plaintiff was ultimately indicted for motor vehicle theft, a felony, and in July 2008, pled guilty to a misdemeanor offense of taking not amounting to larceny.[2]  Plaintiff was sentenced in October 2008 to six months' incarceration, suspended, with six months' probation, along with $5,000 in restitution to Hertz and court costs.

On the present motion, defendants argue that plaintiff's false arrest claim directly calls into question the validity of his underlying criminal conviction for taking not amounting to larceny of the 2004 Pontiac Sunbird owned by Hertz and thus constitutes an impermissible collateral attack on his conviction for taking not amounting to larceny and is therefore barred pursuant to Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).  They submit alternatively that in any event, plaintiff's arrest was lawful, given the outstanding warrant from Georgia for his arrest and/or the existence of probable cause to arrest him relating to the reportedly stolen Hertz vehicle.

---

[2] Plaintiff was actually indicted twice.  The first indictment, which was returned in October 2006 for receiving/possessing stolen property was dismissed, allegedly due to a technical problem, and a second indictment was returned on June 27, 2007.

4

> In Heck, the Supreme Court held:
>
> In order to recover damages for allegedly unconstitutional conviction or imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 487-88, 114 S. Ct. at 2373. Thus, when a plaintiff alleges a tort claim against his arresting officer, "the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Id. at 486, 114 S. Ct. 2364. "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. See also DeLeon v. City of Corpus Christi, 488 F.3d 649, 652 (5th Cir. 2007) (quoting Heck, 512 U.S. at 486, 114 S. Ct. 2364). Since in this case, a judgment in plaintiff's favor on his challenge to the lawfulness of his arrest on charges relating to his taking the Pontiac Sunbird owned by Hertz would necessarily imply the invalidity of his conviction for taking not amounting to larceny, Heck bars his claim for false arrest. See Hudson v. Hughes, 98 F.3d 868, 871-74 (5 Cir. 1996) (allegations of false arrest and malicious prosecution barred by Heck); Wells v. Bonner, 45 F.3d 90, 94-96 (5th Cir. 1995) (holding that the plaintiff's

5

false arrest and malicious prosecution claims were not cognizable in view of Heck).[3]  Further, even if that were not the case, it is clear that the arrest was proper, for not only was there an outstanding Georgia warrant for plaintiff's arrest on a bad check charge, but plaintiff was known to be in possession of a vehicle that the NCIC report reflected had been reported stolen. Plaintiff's false arrest claim will be dismissed.

As for the alleged unlawful seizure of plaintiff's personal property, the only competent evidence in the record pertaining to that seizure is Merchant's testimony that he took the box from the Taylor home with the permission of Mrs. Taylor.  There is no basis in the evidence of record for concluding that the seizure was anything other than consensual and therefore lawful.  As the seizure did not violate plaintiff's constitutional rights, neither Merchant nor the Town of DeKalb may be held liable on this claim.[4]

---

[3] Defendants also argue that plaintiff's claim for illegal seizure of his personal property is foreclosed by Heck. However, there is no suggestion that any of the items in the box seized by Merchant related to or in any way substantiated the offense for which plaintiff was convicted.  This claim therefore does not implicate Heck.

[4] Of course, to establish municipal liability, plaintiff would have to show that the alleged illegal seizure occurred pursuant to a municipal policy, custom or practice of conducting unlawful seizures.  Plaintiff has no proof of any such policy of custom.  As defendants note, the only fact plaintiff has identified to support his allegation of a custom or practice relates to an arrest of William Brown by Jeffery Jowers in Philadelphia.  This court, however, considered and dismissed Brown's § 1983 suit, finding there was no constitutional deprivation so the circumstances of his arrest cannot support a

Regarding plaintiff's allegation that many of the items in the box were missing from the box when it was returned, Merchant has testified that he is not aware of anything that was missing from the box when it was returned to plaintiff two days after plaintiff's arrest, and he has stated that he did not keep any of plaintiff's personal property or allow others to have plaintiff's personal property, and that he "certainly did not take, keep, give away, throw away, or otherwise allow the disposition of any music CD's, tax returns, paralegal books, aviation maps, aviation approach 'plates' (which is typically a booklet of airport instrument approach charts), tie tacks, or any other personal property of Mr. Taylor." Merchant states that to his knowledge, there was a delay in the return of only one item, a pocketknife, but that this was ultimately returned to plaintiff. Plaintiff has offered no evidence to refute or undermine Merchant's testimony that he did not take or dispose of plaintiff's property. In the absence of such proof, plaintiff can claim only that Merchant was negligent in failing to safeguard his property from loss. However, negligence claims are not cognizable under § 1983. See Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).[5]

---

finding of an unconstitutional policy, custom or practice.

[5] Even if plaintiff could demonstrate that Merchant intentionally took his property, he could not prevail. A claim for taking of property following a lawful seizure would properly be analyzed under the due process clause; and as an intentional taking, essentially amounting to theft, of plaintiff's seized

7

Turning to plaintiff's excessive force claim, defendants argue that Merchant is entitled to qualified immunity as his conduct was objectively reasonable, and further because plaintiff cannot show that any excessive force was used against him. Defendants acknowledge that in the summary judgment setting, courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion," which "[i]n qualified immunity cases, ... usually means adopting ... the plaintiff's version of the facts." Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 1775 (2007). However, they point out that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776. Thus, in Scott, the Supreme Court held that where there is in evidence a videotape, the authenticity and accuracy of which is not challenged, which captured the event and which contradicts the version of the story told by the plaintiff, then the court should view the facts in the light

---

property would undoubtedly constitute a "random" and "unauthorized" deprivation (there being no suggestion that this is the common practice for dealing with seized items), the existence of an adequate post-deprivation remedy would foreclose a § 1983 claim under the Parratt/Hudson doctrine. See Alexander v. Ieyoub, 62 F.3d 709 (5th Cir. 1995).

8

depicted by the videotape. Id. at 380, 127 S. Ct. at 1776. Defendants point out that in this case, there is a videotape of plaintiff's arrest, taken from the police cruiser's dash-mounted camera, and defendants maintain that this videotape thoroughly contradicts plaintiff's version of his arrest and entitles Merchant to summary judgment.

The court has viewed the videotape offered by defendants, and in fact, it does directly contradict plaintiff's testimony that Merchant grabbed him and pulled him out of the house. The videotape shows, consistent with Merchant's testimony, that Merchant motioned for plaintiff to come outside and that plaintiff did so without any assistance from Merchant. However, as the video reflects, Mrs. Taylor's van was parked adjacent to the door of the home and directly in front of the police vehicle, so that immediately upon plaintiff's exiting the residence, he and Merchant were in front of the van and out of the view of the camera. Unfortunately, it cannot be discerned from the videotape what happened during the brief time the two men were in front of the van before Merchant moved plaintiff around the side of the van so the deputies could escort him to the police vehicle.

The fact that the videotape completely contradicts plaintiff's testimony that he was forcibly yanked from the house will likely influence the factfinder's assessment of the credibility of his assertion that he was slammed into the front of

9

the van and severely injured as a result. However, in the court's opinion, this is a credibility assessment that may not be made by the court at this summary judgment stage but must instead be left to the factfinder at trial.

In addition to contending that both Merchant, in his individual capacity, and the Town are entitled to summary judgment because plaintiff has no evidence to support his allegations of excessive force, the Town also argues that it is entitled to summary judgment because plaintiff cannot establish a municipal policy of using excessive force. However, the Town cannot escape liability on this basis inasmuch as Merchant, as the chief of police, "was the relevant policymaker with final decision making authority as it concerns municipal policy for the conduct of the City's police force." See Bishop v. McCollum, No. 193CV23BD, 1994 WL 1890218, 2 (N.D. Miss. Sept. 27, 1994)(citing Miss. Code Ann. § 21-21-1, which provides, in relevant part, "The marshal or chief of police shall be the chief law enforcement officer of the municipality and shall have control and supervision of all police officers employed by said municipality. The marshal or chief of police shall be the ex officio constable within the boundaries of the municipality, and he shall perform other duties as shall be required of him by proper ordinance.").

Based on the foregoing, it is ordered that defendants' motion is granted in part and denied in part, as set forth herein.

SO ORDERED this 19th day of June, 2009.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE